Jeffrey B. Wihtol, OSB No. 78108
Jeff@WihtolLawOffice.com
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone:  503-228-1210
Fax: 503-228-0016
Counsel for Plaintiffs

Robert H. Beatty-Walters, OSB No. 95449
rbw@beattywalterslaw.com
209 S.W. Oak Street, Suite 400
Portland, OR 97204-2739
Phone: 503-473-8088
Fax: 503-473-8089
Counsel for Plaintiff McClellan

David K. Miller, OSB No. 82337
dkm@miller-wagner.com
Miller & Wagner, L.L.P.
2210 N.W. Flanders St.
Portland, OR 97210
Phone: 503-299-6116
Fax: 503-299-6106
Counsel for Plaintiff McClellan

Michael L. Williams, OSB No. 784260
mwilliams@wdolaw.com
Leslie W. O'Leary, OSB No. 990908
loleary@wdolaw.com
Thomas B. Powers, OSB No. 983933
tpowers@wdolaw.com
Williams Love O'Leary & Powers, P.C.
9755 S.W. Barnes Rd., Suite 450
Portland, OR 97225-6681
Phone: 503-295-2924
Fax: 503-295-3720
Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

CHRISTINA MCCLELLAN,                                   Case No. 07-CV-1309-AA

            Plaintiff,                                  MEMORANDUM IN SUPPORT OF

Page 1 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
            EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
            LIMIT FURTHER DISCOVERY OF FREDERICK A.
            MATSEN, III, M.D. AND TO QUASH SUBPOENAS

v.

I-FLOW CORPORATION, a Delaware
corporation; DJO, L.L.C., a Delaware
corporation; and DJO INCORPORATED,
a Delaware corporation, and
PACIFIC MEDICAL, INC., a
California corporation,

     Defendants.

GORDON ADDIS,

     Plaintiff,

v.

MCKINLEY MEDICAL, L.L.C., a
Colorado corporation; MOOG, INC., a New
York corporation; DJO INCORPORATED,
a Delaware corporation; DJO, L.L.C., a
Delaware corporation; PACIFIC
MEDICAL, INC., a California corporation,
CURLIN MEDICAL, L.L.C., a California
corporation, and CURLIN MEDICAL, INC.,
a Delaware corporation,

     Defendants.

PLAINTIFF'S EMERGENCY MOTION FOR
PROTECTIVE ORDERS TO LIMIT
FURTHER DISCOVERY OF
FREDERICK A. MATSEN, III, M.D.
AND TO QUASH SUBPOENAS

Case No. 07-CV-1318-AA

Page 2 - MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

<u>TABLE OF CONTENTS</u>

A.    Introduction ................................................................................................3

B.    Motion 1: For An Order Terminating Dr. Matsen's "General
      Causation" Deposition Or Alternatively, Limiting Defendants
      To No More Than An Additional 30 Minutes Of Deposition
      Questioning Of Dr. Matsen.........................................................................4

      1.    Because defendants have had an adequate opportunity to
            both depose Dr. Matsen in this case, and cross-examine him
            in other litigation, the Court should terminate the deposition
            because further questioning would be for the purpose of
            harassment, cumulative of previous testimony, and would
            annoy and oppress Dr. Matsen..............................................................5

      2.    The fact that plaintiff's lawyer exercised his right to question
            the witness does not justify a new round of redundant examination
            by defendants........................................................................................7

      3.    Defendants' cited authority is inappropriate.........................................10

      4.    Reasonable limits on defendants' pursuit of Dr. Matsen are
            necessary and appropriate....................................................................13

C.    Motion 2:  Plaintiff Moves The Court For An Order Relieving Dr.
      Matsen, His Chondrolysis Research Team, And The University Of
      Washington Of Any Obligation Of Further Production Regarding
      Their Ongoing Chondrolysis Research Until 30 Days Prior To
      Commencement Of Any Trial In Which Dr. Matsen Has Been
      Designated As An Expert Witness, And Even Then Only Upon A
      Showing Of Special Need.................................................................14

D.    Motion 3:  Plaintiff Moves The Court For An Order Quashing Subpoenas
      Issued By Breg, Inc. to Frederick A. Matsen, III, M.D., Charles L. Beck,
      M.D., The *Journal Of Bone And Joint Surgery*, And The *American Journal
      Of Sports Medicine*..........................................................................17

      1.    Breg's Subpoena to Dr. Matsen, Ex. 12, seeks the same production
            that Dr. Matsen and the University of Washington have made in the

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

pain pump cases......................................................................................................18

2.      Breg's Subpoena to the *Journal of Bone and Joint Surgery* seeks discovery previously produced by Dr. Matsen and the University of Washington, mischaracterizes Dr. Matsen's role as an independent academic researcher, prejudicing Dr. Matsen, and improperly interferes with the ongoing peer review process of a manuscript submitted for publication to this Journal by Dr. Matsen.............................................................19

3.      Breg's Subpoena to the *American Journal of Sports Medicine* seeks discovery previously produced by Dr. Beck, mischaracterizes Dr. Beck's role as an independent researcher, and seeks proprietary and confidential documents.................................................................................................................21

4.      Breg's Subpoena to Charles L. Beck, M.D. improperly seeks discovery previously produced by Dr. Beck, was issued for the purpose of harassment, and will cause undue burden and expense...........................................22

5.      Breg's Subpoenas are issued for the purpose of harassing plaintiff's experts and potential experts.................................................................................22

E.      Conclusion.........................................................................................................24

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

## TABLE OF AUTHORITIES

**Cases**

*Brown v. Coleman*, Case No. 07-civ-1345-LMM, 2008 WL 5215889
(S.D.N.Y. Dec 9, 2008)..................................................................................12, 13

*Crawford v. American Legion Ambulance Asso.*, Case No. 08-2338-RBK-KMW,
2009 WL 5218060 (D.N.J. Dec. 30, 2009)...................................................11, 12

**Statutes and Rules**

Fed. R. Civ. P. 26(b)(2)(C)......................................................................................3, 6

Fed. R. Civ. P. 26(b)(2)(C)(i)......................................................................................5

Fed. R. Civ. P. 26(b)(2)(C)(ii).....................................................................................5

Fed. R. Civ. P. 30.........................................................................................................5

Fed. R. Civ. P. 30(c)(1)............................................................................................5, 8

Fed. R. Civ. P. 30(d)(1)................................................................................................4

Fed. R. Civ. P. 30(d)(3).........................................................................................3, 5, 6

Fed. R. Civ. P. 32(a)(4)................................................................................................9

Fed. R. Civ. P. 32(a)(4)(A).........................................................................................11

Fed. R. Civ. P. 32(a)(4)(E)....................................................................................11, 12

F.R.E. 804(b).............................................................................................................10

ORCP 45(c)(1)...........................................................................................................18

Page iii -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

A.    **Introduction.**

Dr. Frederick Matsen is one of plaintiff's designated expert witnesses.   In Motion 1,

plaintiff seeks an order terminating Dr. Matsen's "general causation"[1] deposition, as authorized

by Fed. R. Civ. P. 30(d)(3) and 26(b)(2)(C).   In the alternative, plaintiff seeks an order limiting

defendants to no more than an additional 30 minutes of deposition questioning of Dr. Matsen.  In

Motion 2, plaintiff seeks an Order protecting Dr. Matsen, his chondrolysis research team, and the

University of Washington from further undue burden, expense, and harassment by relieving them

of any obligation to produce additional discovery regarding their ongoing chondrolysis research

until 30 days prior to the commencement of any pain pump trial in which Dr. Matsen has been

designated as an expert witness.

In Motion 3, plaintiff seeks an Order quashing the four Subpoenas issued by Breg, Inc., a

pain pump manufacturer, issued to Dr. Frederick Matsen, the *Journal of Bone and Joint Surgery*,

the *American Journal of Sports Medicine*, and Dr. Charles Beck.  Expert witnesses have not even

been disclosed yet in the *Slavenski* case in which Breg issued the Subpoenas.  The response dates

are March 24, 2010.  The Subpoenas issued to Drs. Matsen and Beck seek documents already

produced to defendants in the pain pump litigation.  The Subpoena to the *Journal of Bone and*

*Joint Surgery* mischaracterizes Dr. Matsen's role in a prejudicial manner and seeks documents

previously produced.  Moreover, it appears calculated to interfere with the ongoing peer review

of Dr. Matsen's manuscript regarding his study of the Benz patient population.  The Subpoena

issued to the *American Journal of Sports Medicine* also mischaracterizes Dr. Beck's role in a

prejudicial manner and seeks documents previously produced.  These Subpoenas are

unnecessary, calculated to further harass, unduly burden, and prejudice plaintiff's experts, and

---

[1] The parties have jointly characterized the discovery depositions of Dr. Matsen on all topics other than those pertaining to a specific plaintiff as the "general causation" deposition.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

meddle in the peer review process currently underway for one of Dr. Matsen's chondrolysis research manuscripts.

**B.** **Motion 1:  For An Order Terminating Dr. Matsen's "General Causation" Deposition Or Alternatively, Limiting Defendants To No More Than An Additional 30 Minutes Of Deposition Questioning Of Dr. Matsen.**

As explained more fully below, defendants have had more than an adequate opportunity to depose Dr. Matsen.  Defendants have already deposed Dr. Matsen on five occasions, stretching over five days, and 24 hours.  Defendants have far surpassed the one day, seven hour standard for depositions:

> "(1)  *Duration*.  Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours.  . . ."

Fed. R. Civ. P. 30(d)(1).  Defendants' "general causation" questioning has spanned three days and approximately 20 hours.   Additionally, defendant Stryker fully cross-examined Dr. Matsen at the trial of *Grossnickle v. Stryker Corporation*, Multnomah County Circuit Court Case No. 0703-02834, and defendant I-Flow fully examined him in his video taped trial testimony in the *Beale v. I Flow Corporation*, Multnomah County Circuit Court Case No. 0801-01554, on December 10, 2009.  They have examined him for six days over the past year.

Defendants have had ample opportunity to question Dr. Matsen.  And defendants do not contend otherwise.  Instead, defendants argue they should be allowed to continue deposing Dr. Matsen so that they can reorder, restructure, and repeat their examination in the manner they would like to have it presented at trial.  Defendants contend their repeat questioning of Dr.

Page 4 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
            EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
            LIMIT FURTHER DISCOVERY OF FREDERICK A.
            MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

Matsen is necessary and justified simply because plaintiffs' attorney conducted a brief examination of Dr. Matsen after 20 hours of defendants' interrogations.

Defendants' theory finds no support in the Federal Rules of Civil Procedure. Every deponent is subject to both examination and cross-examination. Fed. R. Civ. P. 30(c)(1). The fact that plaintiff's attorney exercised his right to cross-examine the witness does not mean that defendants can start over and commence a new round of examination merely for the purpose of reordering the same questions in the manner they would like to question the witness at trial. Furthermore, defendants' actions are not justified by the possibility that Dr. Matsen's testimony might be presented at trial by playing a videotape of his deposition. That possibility is present in virtually every deposition, and no rule of civil procedure or case holds that the possibility that a deposition might be used at trial permits a party to exhaustively depose a witness, then start all over again and depose the witness a second time, covering the same ground, for no reason other than to create a more stylistically tactical product.

      1.    **Because defendants have had an adequate opportunity to both depose Dr. Matsen in this case, and cross-examine him in other litigation, the Court should terminate the deposition because further questioning would be for the purpose of harassment, cumulative of previous testimony, and would annoy and oppress Dr. Matsen.**

Oral depositions are governed by Fed. R. Civ. P. 30. Rule 30(d)(3) authorizes orders terminating or limiting a deposition when "it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii) authorize orders limiting the extent of discovery that "is unreasonably

Page 5 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

cumulative or duplicative," or where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."

The manner in which defendants have pursued Dr. Matsen's deposition satisfies the standard in Rules 30(d)(3) and 26(b)(2)(C) and warrants an order terminating Dr. Matsen's deposition or, at a minimum, imposing a 30-minute limitation on further questioning by the defendants.

Dr. Matsen has been deposed on five separate dates spanning 25.5 hours in the pain pump cases. His testimony consumes 810 pages. Defendants' questioning covers 734 of those pages. The vast majority of the defendants' questioning of Dr. Matsen has been on his "general causation" opinion, at three videotaped sessions, on September 4, 2009, January 28, 2010, and February 17, 2010. In total, these general causation depositions span over 23 hours and 719 pages of transcript. Plaintiffs' questioning covers only 48 of those pages. In addition to these deposition sessions, Dr. Matsen testified fully about his general causation opinions on March 5, 2009 in the *Grossnickle* case, where his direct examination was limited to 36 pages, but cross-examination by Stryker's counsel engulfs 89 pages of transcript. Ex. 1, *Grossnickle* Transcript excerpts, at 1587-1741. **(All Exhibits cited herein are attached to the Declaration Of Jeffrey B. Wihtol In Support Of Plaintiff's Motion For Protective Orders To Limit Further Discovery Of Frederick A. Matsen, III, M.D. filed herewith.)**

The defendants have had every opportunity to ask every conceivable question relating to Dr. Matsen's expert opinions in this case. Defendants do not identify any topics, subject, matters, or questions that they need to ask of Dr. Matsen and which they have not previously asked at least once. Indeed, the statements by Stryker's counsel on his desire to conduct hours more questioning of Dr. Matsen do not mention a single topic that he wants to cover with

Page 6 -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

additional questioning.  Stryker just wants a do-over.  *See*,  Ex. 2, Transcript Excerpts of 2/17/10 Depo., at 700:17-701:5, 749:8-750:10, 756:20-758:4, 811:22-25, and 813:19-814:3.

### 2.    The fact that plaintiff's lawyer exercised his right to question the witness does not justify a new round of redundant examination by defendants.

Defendants' February 18, 2010, letter to the Court argues that despite all of the questioning already conducted, they are entitled to continue examining Dr. Matsen because when defendants finally concluded their examination, plaintiffs exercised their rights to also examine the witness. Ex. 3, 2/18/10 Letter.  We will first review what happened at Dr. Matsen's videotaped deposition.  Then we will show why defendants are wrong.

The "general causation" deposition of Dr. Matsen by the defendants took place over three days of testimony.  All of the questioning of Dr. Matsen during the first two and a half days was conducted by Stryker's counsel.  All defendants concluded their general causation questioning of Dr. Matsen on the afternoon of February 17, 2010.  Plaintiffs' counsel then questioned Dr. Matsen for approximately one hour.  Stryker's counsel objected to the questioning as "a preservation of trial testimony" and demanded "an opportunity to cross-examine the witness." Ex. 2, Transcript Excerpts of 2/17/10 Depo., at 700:17-701:5.  Stryker's counsel estimated that because of questioning by plaintiffs' counsel for approximately one hour, he had an additional three hours of questions for Dr. Matsen.  *Id.*, at   751:22-25.

At the completion of plaintiffs' questioning of Dr. Matsen on general causation, the specific causation questioning in the *McClellan* case was conducted by all parties and completed in only 22 pages of transcript.  Stryker is not a defendant in the *McClellan* case and Stryker's counsel was not involved in this comparatively brief specific causation portion of the deposition.

Page 7 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
             EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
             LIMIT FURTHER DISCOVERY OF FREDERICK A.
             MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

After completing the *McClellan* specific causation deposition of Dr. Matsen, Stryker's counsel began questioning Dr. Matsen again on general causation. The general causation deposition is littered with repeated objections that questions had been previously asked and answered. But now Stryker's counsel dropped any pretense that his questioning was new or original. For example, the chart attached as Appendix 1 (attached to this Memorandum) identifies numerous questions, on numerous topics repeated by Stryker's counsel.[2]

When defendants finished their first 20 hours of questioning Dr. Matsen, plaintiff's lawyer exercised his right to question the witness. Contrary to the statements in defendants' February 18, 2010 letter to the Court, plaintiff's counsel did *not* state that he was conducting a "trial preservation examination;" he did *not* say that he intended to use his examination at trial; and neither Dr. Matsen nor plaintiff's counsel said or indicated that Dr. Matsen "does not wish to appear to testify at trial." All of those statements in defendants' letter are *defendants'* characterizations and suppositions. Ex. 3. All that actually happened was that plaintiff examined the witness—a right expressly contemplated and allowed by Fed. R. Civ. P. 30(c)(1), and the Case Management Order, and something that occurs at depositions every day. Ex. 4, Case Management Order, Doc. No. 93, July 14, 2009, at ¶ 4.

Defense counsel's "surprise" that Dr. Matsen was asked questions by plaintiff's counsel is disingenuous. Plaintiff's counsel notified all defense counsel on January 19, 2010, before the second day of the general causation deposition, that he had about an hour of questions for Dr. Matsen, writing:

---

[2] This chart in App. 1 is exemplary, but not exhaustive, of instances of redundant questioning. The transcript referenced in the App. 1 chart is copied in Exs. 9-11 to the Declaration Of Jeffrey B. Wihtol In Support Of Plaintiff's Motion For Protective Orders To Limit Further Discovery Of Frederick A. Matsen, III, M.D.

Page 8 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

> "I suggest it would be most efficient for all of us if I questioned
> each of these experts [Drs. Matsen and Beck] for one hour to start
> off, followed by all of the examination you have in mind."

Ex. 5, 1/15-19/10 e-mail chain regarding depositions of Drs. Beck and Matsen.  Stryker's

counsel rejected that suggestion promptly.  Plaintiff's counsel again informed all defense counsel

that he would also have questioning of Dr. Matsen on February 12, 2010, before the third day of

general causation deposition.  Ex. 6, 2/11-12/10 e-mail chain regarding Dr. Matsen's continued

deposition.  The protestations by Stryker's counsel of "sandbagging" are completely unfounded.

Ex. 2, 811:11-14.

Defendants' assertion that plaintiff conducted a "trial preservation examination" of the

witness is, with all due respect, somewhat silly since the purpose of *every* deposition is, among

other things, to preserve testimony for use at trial.  Furthermore, the possibility that Dr. Matsen's

deposition might be used at trial provides no justification for extending the deposition so that

defendants can first conduct a "discovery deposition," then initiate a highly repetitive

examination tactically tailored for presentation at trial.  The possibility that a deposition might be

used at trial is not unique to Dr. Matsen; instead, it exists with almost every deposition.

For example, under Fed. R. Civ. P. 32(a)(4), a deposition may be used at trial for any

purpose if (1) the witness is dead; (2) the witness is more than 100 miles from the place of trial,

and the witness's absence was not procured by the party offering the deposition; (c) the witness

cannot attend or testify because of age, illness, infirmity, or imprisonment; (d) the party offering

the deposition could not procure the witness's attendance by subpoena; or (e) exceptional

Page 9 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

circumstances make it desirable to permit the deposition to be used. And under F.R.E. 804(b), the hearsay rule does not exclude presenting deposition testimony by an unavailable witness if the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Thus, there is always the possibility that a deposition might be used at trial—but that does not mean a party is entitled to conduct repetitive examinations of the witness. Moreover, the Case Management Order in this case regarding coordination of certain expert witness discovery depositions expressly states that expert deposition testimony "will be admissible at hearings or at trial for any purpose permitted by the Federal Rules of Evidence." Ex. 4, Case Management Order, at ¶ 5.

Whether or not Dr. Matsen's deposition will be used at the time of trial is unknown and remains to be seen. In the event it is, the parties are quite familiar with the use of videotaped discovery depositions edited for use at trial. This was done by Stryker in the *Grossnickle* case respecting many videotaped discovery depositions in that case, and in the *Beale* trial, Dr Matsen's video deposition taken almost a month before trial was played.

Nor can defendants justify their request for more examination on the grounds that they were inquiring about subjects raised for the first time during the questioning by plaintiff's counsel. Defendants did not follow-up on new matters that defendants had somehow overlooked during their previous 20-plus hours of examining Dr. Matsen. Instead, the examination was merely a repackaging of questions already asked and answered, often more than once.

### 3.  Defendants' cited authority is inappropriate.

Finally, defendants' position is not aided by the two unpublished district court decisions cited in a footnote in their February 18 letter. Neither of those cases holds that a party who has already examined a witness for 20 hours gets to begin anew and do it again just because another

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

party has exercised its right to examine the witness. In fact, the two cases cited by defendants arose in a situation entirely different from Dr. Matsen's deposition.

As explained previously, under the Federal Rules of Civil Procedure and the Federal Rules of Evidence, a deposition may be used at trial if any of a number of circumstances are present. Most of the circumstances do not require leave of the court; instead, a party has the right to use a deposition at trial for any purpose if, for example, the witness is dead. Fed. R. Civ. P. 32(a)(4)(A). One situation where court permission is required, however, is Fed. R. Civ. P. 32(a)(4)(E). Under that rule, a deposition may be used at trial for any purpose if, on motion and notice, the court rules that "exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used," even if the witness is available to testify at the trial. The two cases cited by defendants involved a party's effort to invoke this rule as a basis for using deposition testimony at trial.

In *Crawford v. American Legion Ambulance Asso.*, Case No. 08-2338-RBK-KMW, 2009 WL 5218060 (D.N.J. Dec. 30, 2009), the plaintiff moved for leave to present an available expert witness at trial via a videotaped deposition to be conducted after the defendant conducted its discovery deposition. The plaintiff argued that "exceptional circumstances" were present because the expert witness charged $5,000 for an hour of deposition testimony, but $12,000 for live trial testimony. *See*, App. 2 hereto.[3]  The court held that avoiding the expert's trial fee was not an "exceptional circumstance" that justified allowing the expert to appear via videotape. *Crawford*, 2009 WL 5218060, at *3. The court also held that it would be unfair to the defendant

---

[3] App. 2 to this Memorandum is a copy of pertinent portions of the memorandum of law filed in *Crawford* in support of the plaintiff's request to present the expert's testimony via videotape.

Page 11 -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDERS TO LIMIT FURTHER DISCOVERY OF FREDERICK A. MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

to have the trial examination conducted immediately after the discovery deposition was concluded. *Id.* Notably, defense counsel demanded immediate additional examination of Dr. Matsen, without any delay. Ex. 11, at pp. 749:8-750:23; 813:19-814:3.

Here, there has been no motion under Rule 32(a)(4)(E) to present Dr. Matsen's testimony via videotape, so there is no issue presented concerning under what circumstances a witness's trial testimony should be preserved under that rule. Instead, defendants are attempting to slip Rule 32(a)(4)(E) through the backdoor by arguing that they should be permitted to extend the deposition for the sole purpose of conducting an examination of Dr. Matsen for use at trial. To qualify for that relief, defendants should come forward and attempt to satisfy the standards set by Rule 32(a)(4)(E). Nothing in the federal rules gives defendants the unilateral right to conduct repetitive examinations of the witness until they finally ask the questions in the tactical manner and order they most prefer.

The court's cryptic one paragraph memorandum and order in *Brown v. Coleman*, Case No. 07-civ-1345-LMM, 2008 WL 5215889 (S.D.N.Y. Dec. 9, 2008), also cited by Stryker, is difficult to decipher because the court does not explain anything about the case, and the letter referenced in the order is not available via PACER, so it is impossible to know what counsel asked. But it appears that *Brown*, like *Crawford*, was a situation in which a party asked for leave to preserve her available expert witness's trial testimony by way of a videotaped deposition to be conducted after the defendant conducted a discovery deposition. The court denied the request, finding that it was unfair to the defendant to have the trial examination occur immediately after the discovery deposition (here, in contrast, defendants demanded immediate further examination of Dr. Matsen, without any recess), and coming back another time was also unfair because it would require defense counsel to twice travel to Baton Rouge. Again, *Brown* involved

Page 12 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
            EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
            LIMIT FURTHER DISCOVERY OF FREDERICK A.
            MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

circumstances different from those presented by Dr. Matsen's situation.  Dr. Matsen's deposition involved the very typical, and expressly permitted, circumstance in which a witness is questioned extensively by one party, then another party follows up with its own limited examination.  There has been no motion for leave to present Dr. Matsen's expert's testimony via videotape, as was apparently the issue in *Brown*.

**4.   Reasonable limits on defendants' pursuit of Dr. Matsen are necessary and appropriate.**

Plaintiff asks the Court to intercede and place a reasonable limit on the defendants' obsessive discovery of Dr. Matsen, his research team, and the University of Washington.  Dr. Matsen has shown great patience despite the prolonged and repetitive questioning.  Stryker's counsel has labeled Dr. Matsen, an internationally preeminent shoulder surgeon at the pinnacle of his profession, as counsel's "puppet."  Stryker's counsel has publicly called Dr. Matsen "counsel's mouthpiece."  Stryker has publicly characterized Dr. Matsen as incompetent, unethical, and engaged in a cover-up by intentionally violating Court orders.  Stryker has accused Dr. Matsen of allowing counsel to  secretly conduct Dr. Matsen's research.  This type of unfounded and repugnant animosity and personal attack, in which all defendants have joined, simply has no place in this litigation and should not be condoned by allowing further harassment and oppression of Dr. Matsen.    Out of fairness to Dr. Matsen, and to all research scientists everywhere who may be asked to serve as expert witnesses, it is time for these attacks to stop.

It is one thing to conduct thorough and careful discovery to probe the methodology used by Dr. Matsen in his chondrolysis research and to identify any erroneous conclusions not supported by the underlying data.  Defendants have doggedly and compulsivley pursued every avenue, alley and pigtrail in an effort to uncover some sort of misconduct or major

Page 13 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

miscalculation that would undermine Dr. Matsen's methodology. But despite full access to all of the raw data and the data extraction, analysis, and conclusions of Dr. Matsen and his research team, the defendants have produced no sound criticisms of the scientific validity of Dr. Matsen's research and conclusions. Instead, defendants have resorted to unbridled character assassination repeatedly. This Court should not grant further license to the defendants to continue in this manner.

In the alternative to plaintiff's motion to terminate Dr. Matsen's deposition, plaintiff moves to limit the deposition to no more than 30 additional minutes of questioning. Defendants have had plenty of time to examine Dr. Matsen. But if the Court concludes that any additional time is warranted, the Court should impose a time limitation to prevent defendants from wasting additional time and harassing the witness through hours of more repetitive questioning.

C.     **Motion 2:  Plaintiff Moves The Court For An Order Relieving Dr. Matsen, His Chondrolysis Research Team, And The University Of Washington Of Any Obligation Of Further Production Regarding Their Ongoing Chondrolysis Research Until 30 Days Prior To Commencement Of Any Trial In Which Dr. Matsen Has Been Designated As An Expert Witness, and even then only upon a showing of special need.**

Dr. Matsen and the University of Washington have produced thousands of pages of documents, including medical records, e-mails, drafts of manuscripts, spreadsheets, and raw data in formats for use with statistical analysis computer programs. Their production comprises nearly five gigabytes of information and approximately 4,000 files. These documents mostly concern the two chondrolysis research studies undertaken by Dr. Matsen.

Page 14 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

The first such study, referred to as the 67 patient study, has passed peer review and will be published in the *Journal of Shoulder and Elbow Surgery* once minor changes are made to the draft manuscript.  The second study, of 375 arthroscopic intra-articular shoulder surgeries performed by Dr. Benz, has been submitted for peer review, where the statistics and methodology editor passed it.  The draft manuscript is in the process of undergoing minor revisions, which will be submitted again as part of the normal peer review process.  All of the chondrolysis research by Dr. Matsen and his colleagues that is pertinent to his expert opinions in these cases has been completed.  The data has been extracted from the patient records.  It has been thoroughly analyzed.  And manuscripts have been drafted and submitted for peer review and publication, a process that is time consuming and may span many months.

Dr. Matsen and his colleagues at the University of Washington have produced all of the raw data considered by them in their chondrolysis research.  They have produced all documents reflecting their analysis of that data and all draft manuscripts.  All communications with journals and journal reviewers have been produced.  Numerous spreadsheets, charts, tables, and graphs, containing their extraction of data from the raw patient records and their analysis of that data have been produced.

All of this production has imposed a significant burden and expense on Dr. Matsen, his colleagues, and the University of Washington.  While the exact wording of the manuscripts that will be published in the peer reviewed literature may undergo changes in the future, the

Page 15 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210   Fax: (503) 228-0016

underlying raw data, analysis of that data, and conclusions are static and have been produced. *See*, Ex. 7, 3/1/10 letter from Dr. Matsen to plaintiff's counsel.

The push to produce the available discovery to allow questioning by the defendants at the essentially unlimited deposition of Dr. Matsen, in advance of the final briefing on the *Daubert* motions, has been completed. Yet defendants want still more production, and they want it now. Ex. 8, 2/23/10 Letter Request For Additional Production By Dr. Matsen. Just recently, defendant Breg, Inc. in the case of *Slavenski v. Breg, Inc., et al*, Oregon District Court Case No. 09-CV-06241-AA, issued yet another comprehensive Subpoena to Dr. Matsen even though he has not yet been designated as an expert witness. Ex. 12, Subpoena To Produce Documents, Information, Or Objects To Permit Inspection Of Premises In A Civil Action. It is quite clear that this duplicative Subpoena is calculated to harass, unduly burden, and annoy Dr. Matsen. Even if the defendants' hunt cannot produce any sound basis for disqualifying Dr. Matsen as an expert, it is apparently their hope to force him to withdraw by abusing the discovery process with duplicative discovery requests and repugnant character asassination.

There is no longer urgent need for ongoing continuous production by Dr. Matsen and his colleagues at this time. Dr. Matsen is not designated as an expert witness in any case that has been set for trial. Because ongoing continuous production is burdensome for Dr. Matsen and his colleagues, and disruptive of their professional obligations, plaintiff requests that the Court relieve Dr. Matsen, the University of Washington, and Dr. Matsen's team of the obligation to

Page 16 -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S
            EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
            LIMIT FURTHER DISCOVERY OF FREDERICK A.
            MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210   Fax: (503) 228-0016

produce yet more discovery until there is a demonstrated extraordinary need for such production, shortly before any trial in which Dr. Matsen has been designated as an expert witness.

Accordingly, plaintiff respectfully requests that the Court order that Dr. Matsen and his chondrolysis research team and the University of Washington need not produce additional discovery in the Oregon pain pump cases until 30 days prior to the commencement of the trial of any pain pump case in which Dr. Matsen has been designated an expert, and even then only after defendants have demonstrated a great need for such further discovery.  This will allow the defendants ample time to review any additional production, so that they can adequately prepare to cross-examine Dr. Matsen should he testify at such a trial.  And it will relieve Dr. Matsen and the University of Washington and Dr. Matsen's research team of the burden and expense of continuous production, followed by repeated and redundant deposition questioning, over and again.

      **D.**    **Motion 3:  Plaintiff Moves The Court For An Order Quashing Subpoenas Issued By Breg, Inc. To Frederick A. Matsen, III, M.D., Charles L. Beck, M.D., The *Journal Of Bone And Joint Surgery*, And The *American Journal Of Sports Medicine*.**

Defendant Breg, Inc., a pain pump manufacturer, has issued four Subpoenas requiring responses by March 24, 2010.  These Subpoenas seek documents previously produced by Drs. Matsen and Beck, and will subject these physicians to undue burden, expense, and harassment. Expert witnesses have not even been disclosed yet in the *Slavenski* case in which Breg issued the Subpoenas.

Page 17 -     MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDERS TO LIMIT FURTHER DISCOVERY OF FREDERICK A. MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

The two Breg Subpoenas to Journals also seek documents previously produced by Drs.

Matsen and Beck.  These Subpoenas appear calculated to interfere with the peer review process

underway for Dr. Matsen's manuscript on his study of the Benz patient population.  They also

mischaracterize the roles of Drs. Matsen and Beck, suggesting their research was/is litigation-

driven and litigation-biased when it most certainly was not.

> **1.    Breg's Subpoena to Dr. Matsen, Ex. 12, seeks the same production that Dr.
>        Matsen and the University of Washington have made in the pain pump cases.**

There is simply no need for Breg to require Dr. Matsen to produce one more time the

voluminous discovery he has already provided.  ORCP 45(c)(1) mandates:

> "A party or attorney responsible for issuing and serving a subpoena
> must take reasonable steps to avoid imposing undue burden or
> expense on a person subject to the subpoena.  The issuing court
> must enforce this duty and impose an appropriate sanction—which
> may include lost earnings and reasonable attorney's fees—on a
> party or attorney who fails to comply."

Breg issued the Subpoenas in the *Slavenski v. Breg, Inc.* case, filed in the District of

Oregon, Case No. 09-CV-06241-AA.  Exs. 13-16.  But before doing so, Breg's lawyers failed to

ask counsel for Mr. Slavenski whether they would provide Dr. Matsen's productions to Breg's

counsel.  Once the necessary Protective Orders are in place, Breg's counsel can certainly obtain

this same discovery, if Dr. Matsen is designated as an expert.  *See*, e.g. Ex. 16, Supplemental

Stipulated Protective Order Re: Confidentiality Of Discovery Obtained From The University Of

Washington, dated September 22, 2009, *McClellan v. I-Flow Corporation, et al*, Doc. 160.  The

Subpoena to Dr. Matsen is premature since in the *Slavenski* case experts have not been disclosed

yet.  Nevertheless, Breg could have undertaken the professional courtesy of asking plaintiffs'

counsel for a copy of Dr. Matsen's production, instead of disturbing Dr. Matsen at his workplace

by serving subpoenas to Dr. Matsen directly through a Marshall  or other process server.

> **2.** **Breg's Subpoena to the *Journal of Bone and Joint Surgery* seeks discovery previously produced by Dr. Matsen and the University of Washington, mischaracterizes Dr. Matsen's role as an independent academic researcher, prejudicing Dr. Matsen, and improperly interferes with the ongoing peer review process of a manuscript submitted for publication to this Journal by Dr. Matsen.**

Breg's Subpoena to the *Journal of Bone and Joint Surgery*, Ex. 13, seeks documents

previously produced by Dr. Matsen and the University of Washington.  Moreover, it seeks

documents reflecting the internal deliberations and notes of confidential peer reviewers, which

are proprietary and confidential in nature.  The far-reaching nature of this Subpoena, and the

sensitive nature of the documents sought, are not reasonably calculated to lead to the discovery

of admissible evidence.  Dr. Matsen and the University of Washington have been producing

communications with the *Journal of Bone and Joint Surgery* regarding the ongoing peer review

process of the manuscript regarding the study of the Benz patients.  Dr. Matsen and the

University of Washington will continue to produce such documents, and there is no need to

invade or influence the sanctity of the peer review process.

Breg's Subpoena appears designed to prejudice the ongoing peer review process by

mischaracterizing Dr. Matsen's role in a manner suggesting that his chondrolysis research is

litigation driven.  Breg's Subpoena states that it seeks:

Page 19 -   MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone:  (503) 228-1210   Fax:  (503) 228-0016

> ". . . the work done by **plaintiff pain pump litigation expert** Dr.
> Frederick Matsen, and his staff **relating to pain pump litigation** . . ."

Ex. 13, Breg's Subpoena to the *Journal of Bone and Joint Surgery*.  As Breg well knows, from

having appeared in all three of Dr. Matsen's general causation deposition sessions, Dr. Matsen's

chondrolysis research was done separately from and independently of his role as an expert

witness.  Breg is also well aware that Dr. Matsen's chondrolysis research was not litigation

driven and was not done for any reason relating to pain pump litigation.  Furthermore, it is

explicit from the record that Dr. Matsen went to great effort to conduct his study without any

outside influence, from either Dr. Benz or lawyers.

There was no need for Breg to make any mention of "pain pump litigation" or Dr.

Matsen's role as an expert witness in that litigation.  Until disproven by Breg, it is obvious that

Breg's motive is to tamper deliberately with the ongoing peer review process of Dr. Matsen's

manuscript on his study of the Benz patients, which is still under review by this journal.  No

other plausible explanation exists for Breg's unnecessary mischaracterizations.

Moreover, Breg's Subpoena reveals the identity of the surgeon whose patients are the

subject of the study, Dr. Benz.  The *Journal of Bone and Joint Surgery* had no way of knowing

the identity of Dr. Benz until Breg issued this Subpoena unnecessarily identifying him.  Dr.

Matsen's manuscript, submitted to this journal, does not identify the surgeon.  Again, the

implication is that Breg intends to contaminate the peer review process.  If Breg succeeds, it is

virtually certain that it will later argue to this Court that Dr. Matsen's testimony is unreliable

Page 20 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

because it did not survive peer review.  Such tactics offend the dignity of the scientific community and these legal proceedings; they should not be tolerated.

This Court should not permit the litigants before it to interfere in any way with the established peer review process utilized by medical journals.  The defendants may believe Dr. Matsen's research is highly prejudicial to their defense of the pain pump cases.  But that is no justification for intentionally interfering with the advancement of science.  Even if Breg's Subpoena results in a delay in publication of Dr. Matsen's manuscript for only a short time, it is reasonable to expect that additional patients will suffer permanent injury to their shoulders by unwitting use of defendants' pain pumps by still uninformed orthopedic surgeons.

**3.  Breg's Subpoena to the *American Journal of Sports Medicine* seeks discovery previously produced by Dr. Beck, mischaracterizes Dr. Beck's role as an independent researcher, and seeks proprietary and confidential documents.**

Breg's Subpoena to the *American Journal of Sports Medicine*, Ex. 14, mischaracterizes Dr. Beck's role in research just as its Subpoena to the *Journal of Bone and Joint Surgery* mischaracterized Dr. Matsen's role.  Breg's Subpoena states that it seeks:

> ". . . work done by Dr. Brent Hansen and ***pain pump litigation expert***, Dr. Charles Beck, and his staff ***relating to plaintiff's pain pump litigation*** and chondrolysis of the shoulder, commencing in 2004 and culminating in the publication of the article . . ."

*Ibid*.  As with Dr. Matsen, it can only be assumed that Breg unnecessarily and intentionally mischaracterized Dr. Beck's research as litigation driven or connected in order to discredit Dr. Beck among his peers.  It is up to Breg to offer some other plausible explanation for why it

would offer this unnecessary mischaracterization of Dr. Beck, which is facially prejudicial to his reputation as an independent researcher.  As Breg well knows, Dr. Beck's pioneering article on glenohumeral chondrolysis was submitted for publication before he was ever consulted by any attorney in connection with the pain pump litigation.

Dr. Beck has not been disclosed as an expert in the *Slavenski* case.  The Subpoena seeks the confidential notes and comments of anonymous and blinded reviewers, which are proprietary and confidential in nature.

### 4.    Breg's Subpoena to Charles L. Beck, M.D. improperly seeks discovery previously produced by Dr. Beck, was issued for the purpose of harassment, and will cause undue burden and expense.

Dr. Beck has not been disclosed as an expert in the *Slavenski* case.  Expert discovery is premature in the *Slavenski* case.  Had it bothered to ask, Breg could have obtained the voluminous documents previously produced by Dr. Beck in the pain pump litigation by simply conferring with counsel for Mr. Slavenski.  The Breg Subpoena to Dr. Beck is virtually identical to the previous Subpoena issued by defendant Stryker and ruled upon by the Court in setting the scope of production by Dr. Beck.  There is no need or reason to require Dr. Beck to produce the same documents twice, or to litigate the scope of the same Subpoena twice.

### 5.    Breg's Subpoenas are issued for the purpose of harassing plaintiff's experts and potential experts.

Breg's Subpoenas to the *Journal of Bone and Joint Surgery* (Ex. 13) and the *American Journal of Sports Medicine* (Ex. 14) appear calculated to harass, embarrass, and discredit Drs. Matsen and Beck in the eyes of their peers.  The mischaracterizations set forth by Breg in the

MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDERS TO LIMIT FURTHER DISCOVERY OF FREDERICK A. MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone:  (503) 228-1210  Fax:  (503) 228-0016

text of its Subpoenas are obviously calculated to diminish plaintiff's experts' reputation in the scientific community based upon misrepresentations of fact, and/or to drive these experts out of the litigation to escape the baseless mudslinging by Breg and its co-defendants.

The Court should ask why the defendants have not sought discovery from any journal regarding any manuscript or article regarding glenohumeral chondrolysis, except those of plaintiff's experts, Drs. Matsen and Beck.  There are literally dozens of articles that have been published on the subject of glenohumeral chondrolysis now.  Yet only the manuscripts and articles of Drs. Matsen and Beck are the subject of defendants' unwarranted discovery from journals.  It is clear that defendants not only wish to unfairly and maliciously discredit Drs. Matsen and Beck in the eyes of their peers, they also are sending a message to every other chondrolysis researcher that if they should ever agree to serve as an expert witness for a patient in the pain pump cases, they will be the subject of an obsessive and unrelenting hunt for the specific purpose of harming their professional careers.

The Court should set a limit to this unbridled discovery.  Specifically, plaintiff asks the Court toquash these Subpoenas and admonish Breg and its co-defendants to cease the unnecessary, improper, and dishonest attacks on plaintiff's experts.  Careful and thorough expert discovery is permissible and justifiable.  An obsessive voyage to assail and destroy experts who dare advance scientific knowledge by publishing their research, which happens to reflect poorly on the defendants, is neither permissible nor justifiable.

Page 23 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S
            EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
            LIMIT FURTHER DISCOVERY OF FREDERICK A.
            MATSEN, III, M.D. AND TO QUASH SUBPOENAS

E.    __Conclusion.__

The Court should issue an Order terminating the defendants' general causation deposition questioning of Dr. Matsen, or alternatively should limit the defendants' questioning to a maximum of 30 additional minutes.  The Court should also issue an Order relieving Dr. Matsen, the University of Washington, and Dr. Matsen's chondrolysis research team from the obligation to produce ongoing discovery related to their chondrolysis research until defendants demonstrate to the court a special need for any further discovery about his research. Lastly, the Court should quash Breg's four Subpoenas.

Dated:  March 15, 2010.

Respectfully submitted,

s/ Jeffrey B. Wihtol_____
Jeffrey B. Wihtol, OSB #78108
Jeff@WihtolLawOffice.com
620 S.W. Main Street, Suite 602
Portland, OR 97205-3024
Telephone: 503-228-1210
Facsimile: 503-228-0016
Of Attorneys for Plaintiff

Page 24 -    MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDERS TO LIMIT FURTHER DISCOVERY OF FREDERICK A. MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone:  (503) 228-1210  Fax:  (503) 228-0016

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing MEMORANDUM IN SUPPORT OF

PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDERS TO LIMIT FURTHER

DISCOVERY OF FREDERICK A. MATSEN, III, M.D. AND TO QUASH SUBPOENAS was

served upon the following named person(s):

| | |
|---|---|
| Eric Neiman, Esq. | eneiman@williamskastner.com |
| Heather Van Meter, Esq. | hvanmeter@williamskastner.com |
| Williams, Kastner & Gibbs | |
| 888 S.W. 5th Avenue, Suite 600 | |
| Portland, OR 97204 | |

| | |
|---|---|
| Jeffrey Singer, Esq. | jsinger@smsm.com |
| Paul E. Wojcicki, Esq. | pwojcicki@smsm.com |
| Mark Crane, Esq. | mcrane@smsm.com |
| Segal McCambridge Singer & Mahoney | |
| 233 S. Wacker Drive, Suite 5500 | |
| Chicago, IL 60606 | |
| *Of Attorneys for I-Flow Corporation* | |

| | |
|---|---|
| Paul Silver, Esq. | psilver@lindsayhart.com |
| Jay W. Beattie, Esq. | jbeattie@lindsayhart.com |
| Lindsay, Hart, Neil & Weigler, LLP | |
| 1300 S.W. Fifth Avenue, Suite 3400 | |
| Portland, OR 97201-5640 | |

| | |
|---|---|
| Pamela B. Goldsmith, Esq. | pgoldsmith@harrisbeach.com |
| Frederick H. Fern, Esq. | ffern@harrisbeach.com |
| Judi Abbott Curry | jcurry@harrisbeach.com |
| Konrad F. Payne | kpayne@harrisbeach.com |
| Harris Beach PLLC | painpumplit@harrisbeach.com |
| 100 Wall Street | |
| New York, NY 10005 | |
| *Of Attorneys for Defendants McKinley Medical, L.L.C.,* | |
| *Moog, Inc., Curlin Medical, L.L.C., and Curlin Medical, Inc.* | |

Page 25 - MEMORANDUM IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
LIMIT FURTHER DISCOVERY OF FREDERICK A.
MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016

Wm. Kelly Olson, Esq.                                    kolson@mls-law.com
Scott J. Meyer, Esq.                                     smeyer@mls-law.com
Mitchell Lang & Smith
101 S.W. Main Street, Suite 2000
Portland, OR   97204
        *Of Attorneys for Donjoy Corporation, DJ Orthopedic
        Corporation, DJO Corporation, and Pacific Medical, Inc.*

Sara Miller, Esq.                                        smiller@mpplaw.com
Roger G. Perkins, Esq.                                   rperkins@mpplaw.com
Morris Polich & Purdy, L.L.P.
501 West Broadway #500
San Diego, CA 92101

Claudio E. Molteni, Esq.                                 molteni@bscr-law.com
Patrick Lysaught, Esq.                                   lysaught@bscr-law.com
Baker, Sterchi, Cowden & Rice, LLC
2400 Pershing, Suite 500
Kansas City, MO 64108
        *Of Attorneys for Donjoy Corporation, DJ Orthopedic
        Corporation, and DJO Corporation*

John P. Hayes, Esq.                                      jhayes@forsberg-umlauf.com
Forsberg &Umlauf, P.S.
901 Fifth Avenue, Suite 1400
Seattle, WA 98164-2047
        *Of Attorneys for Pacific Medical, Inc.*

Robert H. Beatty-Walters, Esq.                           rbw@beattywalterslaw.com
209 S.W. Oak St., Suite 400
Portland, OR 97204-2739

David K. Miller, Esq.                                    dkm@miller-wagner.com
Miller & Wagner, L.L.P.
2210 N.W. Flanders St.
Portland, OR 97210

Page 26 -  MEMORANDUM IN SUPPORT OF PLAINTIFF'S
           EMERGENCY MOTION FOR PROTECTIVE ORDERS TO
           LIMIT FURTHER DISCOVERY OF FREDERICK A.
           MATSEN, III, M.D. AND TO QUASH SUBPOENAS

                                        LAW OFFICES OF JEFFREY B. WIHTOL
                                                    Attorneys at Law
                                             620 S.W. Main St., Suite 602
                                               Portland, OR 97205-3024
                                        Phone: (503) 228-1210  Fax: (503) 228-0016

Michael L. Williams, Esq.                    mwilliams@wdolaw.com
Leslie W. O'Leary, Esq.                      loleary@wdolaw.com
Thomas B. Powers, Esq.                    tpowers@wdolaw.com
Williams Love O'Leary & Powers, P.C.
9755 S.W. Barnes Rd., Suite 450
Portland, OR 97225-6681
*Of Attorneys for Plaintiff*

on the date indicated below by means of electronic filing notification.

Dated: March 15, 2010.

s/ Jeffrey B. Wihtol
JEFFREY B. WIHTOL, OSB No. 78108
Jeff@WihtolLawOffice.com
Attorney for Plaintiffs

Page 27 -  MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDERS TO LIMIT FURTHER DISCOVERY OF FREDERICK A. MATSEN, III, M.D. AND TO QUASH SUBPOENAS

LAW OFFICES OF JEFFREY B. WIHTOL
Attorneys at Law
620 S.W. Main St., Suite 602
Portland, OR 97205-3024
Phone: (503) 228-1210  Fax: (503) 228-0016